# In the Iowa Supreme Court

No. 23–0598

Submitted October 9, 2024—Filed February 21, 2025

**State of Iowa,**

Appellee,

vs.

**Ezekiel Lawrence Kieffer,**

Appellant.

Appeal from the Iowa District Court for Black Hawk County, Patrice J. Eichman, judge.

A defendant appeals his convictions and sentence for domestic abuse assault. **Affirmed.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer (argued) and Michelle E. Rabe (until withdrawal), Assistant Appellate Defenders, for appellant.

Brenna Bird, Attorney General, and Timothy M. Hau (argued), Assistant Attorney General, for appellee.

**Oxley, Justice.**

After an argument with his girlfriend (we'll call her Daphne)[1], Ezekiel Kieffer assaulted and strangled her. Following a jury trial, Kieffer was convicted of domestic abuse assault impeding the flow of air or blood and domestic abuse assault causing injury, both under Iowa Code section 708.2A (2022). In his direct appeal, Kieffer argues that there was insufficient evidence that his relationship with Daphne constituted "cohabiting" as required to support his domestic abuse assault convictions. Alternatively, he argues that he is entitled to a new trial based on the State's violation of the district court's order in limine. Finally, he challenges the firearm prohibitions triggered by his domestic abuse assault convictions as violating his right to keep and bear arms under the United States and Iowa Constitutions. For the reasons that follow, we affirm Kieffer's convictions and sentence.

### I. Factual Background and Proceedings.

Kieffer and Daphne started dating on May 29, 2022. Daphne testified at trial that she had "just moved [her] stuff in" to Kieffer's residence on June 24 but had previously stayed there for consecutive days. At the time she moved in, Kieffer believed that Daphne was pregnant with his child, and he planned to introduce her to his mother that weekend.

The same day, Daphne, Kieffer, and Kieffer's roommate attended Sturgis Falls, a community event in Cedar Falls. They returned to Kieffer's house intoxicated in the early hours of June 25. Kieffer and Daphne got into a heated argument, the argument escalated physically, and Kieffer strangled Daphne as they wrestled on the floor before she escaped and ran from the home. At

---

[1]We use the pseudonym "Daphne" in reference to the victim throughout this opinion to protect her identity.

approximately 2:35 a.m., law enforcement was dispatched to the house concerning the domestic disturbance. Initially, Daphne didn't want to get the police involved, but she ultimately agreed to press charges against Kieffer. The State charged Kieffer with domestic abuse assault impeding the flow of air or blood in violation of Iowa Code section 708.2A(2)(*d*) and domestic abuse assault causing bodily injury or mental illness in violation of Iowa Code section 708.2A(2)(*b*). A no-contact order was entered prior to trial.

Following trial on February 2, 2023, a jury found Kieffer guilty on both charges: an aggravated misdemeanor, *see* Iowa Code § 708.2A(2)(*d*), and a serious misdemeanor, *see id.* § 708.2A(2)(*b*). Kieffer was sentenced to 180 days (with 93 days suspended) on each count, to be served concurrently. The sentencing order provided: "A Notice of Firearm Prohibition Pursuant to Code of Iowa 724.31A will be entered as a separate order." That notice of firearms prohibition was entered the same day. At the time of sentencing, the district court also issued a sentencing no-contact order that prohibited Kieffer from possessing, shipping, transporting, or receiving firearms and that ordered Kieffer to deliver all firearms to the Black Hawk County Sheriff.

Kieffer raises three arguments in his direct appeal: (1) there was insufficient evidence to find that he and Daphne were in a domestic relationship (i.e., were "persons cohabiting"), (2) the district court abused its discretion when it denied his motion for a mistrial based on the State's violation of the district court's order in limine, and (3) the firearms prohibition is unconstitutional under the Second Amendment to the United States Constitution and article I, section 1A of the Iowa Constitution. We consider Kieffer's arguments in turn.

**II. Analysis.**

**A. Sufficient Evidence to Establish "Cohabiting."** As discussed above, Kieffer was convicted under Iowa Code section 708.2A for domestic abuse assault causing injury, *see* Iowa Code § 708.2A(2)(*b*), and domestic abuse assault impeding the flow of air or blood, *see id.* § 708.2A(2)(*d*). On appeal, Kieffer does not dispute the finding of an assault, challenging only whether there was sufficient evidence to find that he and Daphne were "family or household members who resided together," a required element of both offenses.

We review sufficiency-of-evidence claims for correction of errors at law and will uphold the jury's verdict if it is supported by substantial evidence. *State v. Mathis*, 971 N.W.2d 514, 516 (Iowa 2022). Substantial evidence is defined as evidence that is sufficient to "convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022) (quoting *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018)). In making this determination, we view the evidence "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (quoting *State v. Keopasaeuth*, 645 N.W.2d 637, 640 (Iowa 2002)).

Both of Kieffer's convictions fall under Iowa Code section 708.2A, which defines "domestic abuse assault" as an assault "which is domestic abuse as defined in section 236.2, subsection 2, paragraph '*a*', '*b*', '*c*', or '*d*'" but not paragraph "*e*." Iowa Code § 708.2A(1). The jury instructions used the definition provided in section 236.2(2)(*a*) to define the relevant relationship: an assault "between family or household members who resided together at the time of the assault." The phrase "family or household members" is further defined in section 236.2(2)(*e*)(4)(a) to "mean[] spouses, persons cohabiting, parents, or other

persons related by consanguinity or affinity." While section 236.2 does not further define "cohabiting," the jury instructions provided:

> "Cohabiting" does not require a sexual relationship, but does require more than dwelling or living together in the same place. To determine if the Defendant and [Daphne] were cohabiting at the time of the alleged offense, you may consider whether they had sexual relations while sharing the same living quarters; they shared income or expenses; they jointly used or owned property together; they held themselves out as husband and wife; the continuity and length of their relationship, and any other facts shown by the evidence bearing on their relationship with each other.

We use this explanation in reviewing the record for sufficient evidence to support Kieffer's convictions. *See State v. Schwartz*, 7 N.W.3d 756, 764 (Iowa 2024) ("Where, as here, the defendant does not object to the relevant jury instruction, the instruction is 'the law of the case for purposes of reviewing the sufficiency of the evidence.' " (quoting *Mathis*, 971 N.W.2d at 518)).

The jury instruction follows from *State v. Kellogg*, where we rejected the defendant's argument that cohabiting required "living together as man and wife." 542 N.W.2d 514, 518 (Iowa 1996). In seeking to clarify what is meant by cohabiting, we adopted six nonexclusive factors identified by the California Court of Appeal "as appropriate considerations for making a factual determination as to whether a couple is cohabiting under the umbrella of chapter 236." *Id.*[2] The jury instruction used in this case reflects these factors. Kieffer argues that because his relationship with Daphne does not satisfy some of the factors listed in *Kellogg*, he and Daphne were not "cohabiting," and his conviction must be reversed. We disagree.

---

[2]The six factors identified by the California Court of Appeal include: (1) sexual relations between the parties while sharing the same living quarters, (2) sharing of income or expenses, (3) joint use or ownership of property, (4) whether the parties hold themselves out as husband and wife, (5) the continuity of the relationship, and (6) the length of the relationship. *People v. Holifield*, 252 Cal. Rptr. 729, 734 (Ct. App. 1988).

We start by noting that the determination of whether two people are cohabiting "is a peculiarly factual question which must be answered after examining the situation as a whole." *Id.* That said, we have also recognized that the term "cohabiting" has a "specialized meaning[]," so "[s]imply referring the jury to the ordinary meaning of th[at] term[ is] not enough." *See State v. Virgil*, 895 N.W.2d 873, 881–82 (Iowa 2017) (holding "that [the defendant's] trial counsel breached an essential duty by initially failing to request a jury instruction outlining the *Kellogg* factors and then again by failing to request such an instruction after the jury asked the court to define 'Reside + Domestic' " as included in the marshaling instruction). The *Kellogg* factors help fill that definitional gap.

To be sure, the *Kellogg* factors are instructive and "can be outcome determinative." *Id.* at 881. However, as expressly stated in *Kellogg*, those factors are nonexclusive. *See Kellogg*, 542 N.W.2d at 518 (referring to the six factors as "appropriate considerations" but identifying no threshold number that needed to be satisfied before determining that two people were cohabiting). Contrary to Kieffer's argument, the fact that his relationship with Daphne does not satisfy some of the factors listed in *Kellogg* (and reflected in the jury instruction) does not, in itself, mean that the evidence was insufficient to support the jury's verdict. The *Kellogg* factors are not a checklist that requires each listed item to be met. *Cf. Scarfo v. Cabletron Sys., Inc.*, 54 F.3d 931, 945 (1st Cir. 1995) (describing the difference between legal tests using "elements," where the "[f]ailure to satisfy any one among two or more 'elements' is fatal," and legal tests using "factors," where a "[w]eakness of the showing of one factor, or even total failure to show it, is not fatal; a strong showing as to other factors may outweigh the deficiency").

The jury instruction incorporated the nonexclusive nature of the *Kellogg* factors by adding: "and any other facts shown by the evidence bearing on their relationship." We reiterate that the factors are "appropriate considerations," *Kellogg*, 542 N.W.2d at 518, that should be "weighed and evaluated in making a single 'evaluative' determination that takes account of all of the evidence bearing on all of the 'factors,'" *Scarfo*, 54 F.3d at 945, when determining whether two people are cohabiting. Thus, in considering Kieffer's sufficiency of the evidence challenge, we may consider facts other than those included in the list, and we may weigh some facts more heavily than others.

Sufficient evidence in the record supports the jury's finding that Kieffer and Daphne were cohabiting within the meaning of Iowa Code section 236.2(2)(*e*)(4)(a) at the time of the assault. They were in a serious, romantic relationship. Kieffer thought that Daphne was pregnant with his child and intended to introduce her to his mother the next day. Daphne testified that she had been staying with Kieffer "pretty consistently" and had moved her stuff in that day. On the night of the incident, Daphne told Officer Thomas Fey that she lived at the house and referred to Kieffer's roommate as "my roommate." And when Officer Nolan Young, who transported Kieffer to the station for further questioning, asked Kieffer if he and Daphne lived together, Kieffer responded that "she literally just moved her stuff in today" and told him that they were "about to" have kids together because Daphne was pregnant (it turned out she wasn't). Kieffer's denial at trial that Daphne lived with him does not defeat this contrary evidence.

The existence of a sexual relationship and some form of shared dwelling has generally been considered sufficient evidence on appeal to support a jury's finding of cohabiting. *See, e.g., State v. Wooten*, No. 23–1785, 2024 WL 4615747,

at *3–4 (Iowa Ct. App. Oct. 30, 2024) (holding that evidence was sufficient to establish the defendant was "cohabiting" with the victim to support his domestic abuse assault conviction based on evidence they were in a sexual relationship and the defendant had moved bags of clothes into the victim's apartment and stayed there for two weeks prior to the assault even though he continued to see the mother of his children); *State v. Smith*, No. 22–1848, 2023 WL 8069248, at *1–3 (Iowa Ct. App. Nov. 21, 2023) (holding that evidence established cohabitation where the defendant and the victim had been in an "on-again/off-again relationship" over a period of three to four months and the conviction stemmed from an assault four days after the defendant had moved back in with the victim); *State v. Lee*, No. 17–0413, 2018 WL 1099273, at *2 (Iowa Ct. App. Feb. 21, 2018) (holding that evidence was sufficient to support cohabitation where the defendant and the victim dated for a few months and quickly moved in together); *State v. Greer*, No. 09–0459, 2010 WL 3324966, at *5 (Iowa Ct. App. Aug. 25, 2010) (affirming domestic abuse assault based on evidence that the defendant and the victim had a sexual relationship, stayed in hotels together, shared money, and the defendant used the victim's car, where he kept his clothes).

Here, Kieffer and Daphne were in a serious relationship, thought Daphne was pregnant with Kieffer's child, and had just moved in together. These facts are sufficient to establish that they were cohabiting. While the length of the relationship is one factor to consider, that does not mean the parties must reside together for any particular length of time as long as other considerations establish the presence of cohabitation. Thus, the fact that Daphne had just moved in does not preclude a finding that she and Kieffer were cohabiting. Based on the facts presented, sufficient evidence supports the jury's finding that Kieffer

and Daphne were cohabiting—i.e., that they were "family or household members who resided together at the time of the assault." Iowa Code § 236.2(2)(*a*). We therefore affirm Kieffer's convictions under Iowa Code section 708.2A.

**B. Order in Limine Violations.** Kieffer next argues that the State committed two violations of the district court's order in limine during trial that were sufficiently prejudicial to warrant a mistrial. We review a district court's denial of a motion for mistrial for an abuse of discretion. *State v. Brown*, 5 N.W.3d 611, 614–15 (Iowa 2024). Our review recognizes that the district court is entitled to "considerable discretion" because it is "in a better position than the reviewing court to gauge the effect of the matter in question on the jury." *Id.* at 615 (quoting *State v. Jirak*, 491 N.W.2d 794, 796 (Iowa Ct. App. 1992)). "[W]e ordinarily only find an abuse of discretion upon the denial of a mistrial 'where there is no support in the record for the trial court's determination.' " *Id.* (quoting *Jirak*, 491 N.W.2d at 796); *see also State v. Huser*, 894 N.W.2d 472, 498 (Iowa 2017) ("A trial court's exercise of discretion [in denying a motion for mistrial based on admission of improper evidence] may be reversed on appeal only when it is demonstrated that the discretion of the trial court 'was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " (quoting *State v. Brewer*, 247 N.W.2d 205, 211 (Iowa 1976))).

When evidence is introduced contrary to an order in limine, but the district court promptly strikes the evidence and admonishes the jury to disregard it, a mistrial may be granted only when the forbidden evidence is so prejudicial that its effect on the jury could not be erased by the district court's admonition. *See Huser*, 894 N.W.2d at 498. For Kieffer to succeed on appeal, he must establish that the State's violation of the district court's order in limine prejudiced the jury against him to the point that he was denied a fair trial. *State v. Brown*,

996 N.W.2d 691, 696 (Iowa 2023). Based on our review of the record, Kieffer fails to meet this standard.

Kieffer's counsel filed a motion in limine seeking to exclude any evidence referring to Kieffer's prior arrests or interactions with the police. The motion in limine also sought to exclude any reference to the complaining witness as a "victim" by the State or any of its witnesses. The district court granted the motion as to both points.

Kieffer challenges two specific instances at trial that he claims violated the order in limine. The first occurred during Daphne's testimony related to her initial reluctance to talk to law enforcement. The State engaged in the following questioning:

> Q. Did you have some reluctance to involve law enforcement or to tell them who had caused those injuries?
>
> A. Yes.
>
> Q. Why?
>
> A. I just didn't want it to come to this because I've been in this situation before and it's a long process.

Kieffer immediately objected. After the jury was removed from the courtroom, Kieffer argued that the statement implied that he had abused Daphne on a prior occasion. Even though voir dire revealed that Daphne was referring to an ex-boyfriend rather than Kieffer, Kieffer moved for a mistrial, asserting that the characterization of Daphne as a domestic abuse victim "paints a different kind of picture." The district court denied Kieffer's request for a mistrial or for a limiting instruction. But it directed the State to clarify through further questioning of Daphne in the jury's presence that her reference to "be[ing] in this situation before" referred to an ex-boyfriend, not Kieffer. The State complied with the district court's direction when questioning resumed.

The second situation occurred during the testimony of Officer Fey, the arresting officer. After playing Officer Fey's bodycam video for the jury, the State walked Officer Fey through the footage, stopping to ask:

> Q. And so when you arrived at the scene were you directed towards where the interested parties might be?

> A. Yes, and I had been to that residence.

Kieffer immediately objected, arguing that the State had elicited testimony implying that he was involved in prior interactions with the police, again violating the order in limine. Kieffer pointed out that the State had a responsibility to ensure its witnesses understood what testimony was precluded by the order in limine. Even though voir dire of Officer Fey confirmed that he was referring to a psychiatric call for Kieffer's roommate, the district court agreed that the testimony "is in direct violation of the motion in limine." But the district court again denied Kieffer's request for a mistrial, this time warning the State that "the cumulative effect of the prior violation . . . plus this . . . is getting close to me to being a cumulative effect that might be a mistrial." The district court again directed the State to correct the record when the jury returned to the courtroom. The State asked Officer Fey two questions to clarify that the prior visit was unrelated to Kieffer and that the visit had not been due to any criminal activity.

It is not clear that Daphne's testimony about having been "in this situation before" violated the order in limine. Kieffer moved in limine to exclude any references to Daphne as a "victim" because it would "prejudicially convey[] the speaker's opinion that the crime in question in fact has occurred," in violation of the presumption that Kieffer was innocent. While Daphne's testimony could have led the jury to believe that Kieffer had done something similar to her before, the district court properly directed the State to correct that possible misperception through further questioning, clarifying that Daphne was referring to a prior

boyfriend. That tactic more effectively corrected the misperception with the jury while not calling undue attention to the testimony through a limiting instruction.

We agree with the district court that the second instance violated the order in limine. In his motion in limine, Kieffer sought to exclude "[a]ny reference that law enforcement officers know or are familiar with Defendant." Kieffer explained that he anticipated that the State might introduce evidence about prior interactions between Kieffer and police officers, arguing that "[s]aying things such as 'they have been to this house before' or 'this is not the first time they have been out here'" would serve only to "to show bad character and a propensity for criminality," improper evidence prohibited by Iowa Rules of Evidence 5.401 and 5.404(*b*). Officer Fey's statement, "I had been to that residence," was nearly verbatim to the testimony that Kieffer asked to exclude.

Despite this violation, we conclude that the district court's remedy cured any prejudice that might have followed from the testimony. "We . . . allow trial courts broad discretion in determining whether to grant a mistrial. Such discretion is a recognition of the trial court's better position to appraise the situation in the context of the full trial." *Fry v. Blauvelt*, 818 N.W.2d 123, 132 (Iowa 2012) (omission in original) (quoting *Eldridge v. Casey's Gen. Stores, Inc.*, 533 N.W.2d 569, 571 (Iowa Ct. App. 1995)). Here, as soon as the jury returned to the courtroom, Officer Fey clarified that his prior "visit" to Kieffer's residence was unrelated to Kieffer and did not involve criminal activity. The jury was unaware that the prior visit involved Kieffer's roommate—who was a witness at trial—or that it involved a psychiatric call. Thus, Kieffer's concerns about tainting his roommate's credibility as a witness were avoided. "[I]n the context of the full trial," *Fry*, 818 N.W.2d at 132, the district court's efforts were more effective than striking the testimony or otherwise providing a limiting instruction, both of

which would have called more attention to the testimony than the clarification. Weighing the tangential nature of this testimony and the district court's efforts to cure any improper use of it against the remainder of the evidence presented at trial, we cannot say that the asserted order in limine violations so prejudiced the jury that Kieffer was deprived of a fair trial. *See State v. Jackson*, 587 N.W.2d 764, 766 (Iowa 1998) ("Ordinarily the striking of improper testimony . . . cures any error. Only in extreme instances where it is manifest that the prejudicial effect of the evidence on the jury remained, despite its exclusion, and influenced the jury is the defendant denied a fair trial and entitled to a [mistrial]." (alteration in original) (quoting *State v. Peterson*, 189 N.W.2d 891, 896 (Iowa 1971), *overruled on other grounds by State v. Gorham*, 206 N.W.2d 908 (Iowa 1973))).

Given the scale of the multiday trial, the two alleged order in limine violations—both of which the district court cured immediately and effectively—do not support Kieffer's request for a mistrial. We conclude that the district court did not abuse its discretion in denying his motion. *See Huser*, 894 N.W.2d at 499 (concluding that the district court did not abuse its discretion when it denied a motion for mistrial where "the three improper questions were a very small part of the fourteen-day trial with forty-five witnesses"); *State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006) (concluding that the district court did not abuse its discretion when it denied a motion for a mistrial where "[t]he reference to drug charges occurred only once, and there were no questions that elaborated on this information"). The facts of this case demonstrate why we give broad discretion on such matters to the district court. The district court judge, being in a better position to ensure the fairness of the proceeding, ably and efficiently cured the asserted order in limine violations to minimize the risk of any potential prejudice

to Kieffer. We therefore affirm the district court's denial of Kieffer's motion for a new trial.

**C. Constitutional Challenge to Firearm Prohibition.** Kieffer also challenges the firearm prohibition referenced in the judgment and sentence order, included in the sentencing no-contact order, and included in the notice of firearm prohibition as violating his right to "keep and bear arms" under the Second Amendment to the United States Constitution and article I, section 1A of the Iowa Constitution. In addition to addressing the merits of the challenge, the State raises a number of procedural issues, arguing that the firearms prohibition is not properly before us in Kieffer's direct appeal of his underlying convictions.

1. *Is the firearm issue properly raised in Kieffer's direct appeal?* The State argues that the firearms issue is not ripe because Kieffer has not yet sought to be removed from the background check system database as provided in Iowa Code section 724.31A(2). And even if the issue is ripe, the State argues that Kieffer did not preserve error on the issue by challenging the constitutionality of the firearms prohibition in district court. Kieffer argues that because the firearms prohibition was included in the sentencing order, it was a term of his sentence that we can address on direct appeal even if not raised below.

The March 31, 2023 judgment and sentence order required that the previously entered no-contact order remain in effect for five years. It also stated: "A Notice of Firearm Prohibition Pursuant to Code of Iowa 724.31A will be entered as a separate order." Accordingly, the district court entered both a sentencing no-contact order and a notice of firearm prohibition pursuant to Iowa Code section 724.31A the same day.

The sentencing no-contact order stated: "The defendant has been convicted of the following crime(s): Domestic Assault (2 COUNTS). The court

finds the presence of or contact with the defendant poses a threat to the safety of [DAPHNE]." The "intimate partner" box was also checked, indicating that "the court finds the defendant and protected party meet the definition of intimate partners as defined in 18 U.S.C. 921(a)(32)." Given that finding, the sentencing no-contact order further provided:

Therefore, the court orders as follows:

5. . . . [T]he defendant has been convicted of domestic abuse assault under Iowa Code 708.2A. Therefore, the defendant shall not possess, ship, transport, or receive firearms, offensive weapons, or ammunition unless such rights have been restored in accordance with Iowa Code section 724.27. Defendant shall deliver all firearms to BLACK HAWK County Sheriff . . . on or before IMMEDIATELY.

The separate notice of firearm prohibition, also entered the same day, provided:

Pursuant to I.C. 724.31A, the court hereby notifies the party named above that, in the case number indicated above, the court issued an order or judgment by which the party named above lost firearm rights because the party named above met one or more of the following criteria [*Judge: check applicable criteria*]:

* Misdemeanor crime of domestic violence [I.C. 724.26(2) and 18 USC 922(g)(9)].

This notice is consistent with what the district court told Kieffer at the end of the sentencing hearing: "[B]ecause these were domestic assaults, there is a firearm prohibition pursuant to Iowa law 724.31(A) [sic]. That's gonna be entered as a separate order but you'll see that. That prohibits you from having firearms." Kieffer filed a notice of appeal on April 11 "from the final order entered in this case on the 31st day of March 2023, and from all adverse rulings and orders inhering therein."

Ordinarily, "errors in sentencing may be challenged on direct appeal even in the absence of an objection in the district court." *See State v. Lathrop,*

781 N.W.2d 288, 292–93 (Iowa 2010) (providing "a brief historical review," which revealed that "[s]ince our decision in [*State v.*] *Wilson*, [294 N.W.2d 824 (Iowa 1980),] Iowa appellate courts have held in a variety of circumstances that errors in sentencing need not be first challenged in the district court"); *see also State v. Chawech*, 15 N.W.3d 78, 84 (Iowa 2024) (expounding on the difference between challenges to "procedurally defective sentences" and "illegal sentences"). The failure to raise the constitutional challenge in district court does not, in itself, prevent us from considering it on appeal. Rather, the relevant question is whether the firearm prohibition is a term of Kieffer's judgment and sentence order that can be addressed on direct appeal from his underlying conviction and sentence. Under the circumstances of this case, we conclude that it is.

In *State v. Rasmussen*, we considered a no-contact order entered in a dismissed simple misdemeanor case on direct appeal in a related criminal case "because the district court incorporated [the no-contact order from the dismissed case] into the sentencing order in this case." 7 N.W.3d 357, 365 (Iowa 2024); *see also State v. Hall*, 740 N.W.2d 200, 202 (Iowa Ct. App. 2007) (considering a constitutional challenge to no-contact order included in the defendant's sentence over the state's argument that the issue was not preserved because it was not presented in district court). Likewise, conditions of probation can be considered on direct appeal as long as the conditions are included in the judgment and sentence order. *Lathrop*, 781 N.W.2d at 292–93. So too can terms and conditions of bail—again, only to the extent they are included in the judgment and sentence order. *See State v. Formaro*, 638 N.W.2d 720, 727 (Iowa 2002) (distinguishing bail as "separate and independent from the underlying judgment and sentence entered by the court" but nonetheless considering a challenge to the terms of bail included in the judgment on direct appeal). The same is true for orders to

pay restitution. *See State v. Gross*, 935 N.W.2d 695, 698–99 (Iowa 2019) ("On the other hand, restitution is part of a sentence, and when a party appeals a sentence, some issues may be raised for the first time on appeal even though they were not raised in the district court."); *see also State v. Richardson*, 890 N.W.2d 609, 616–17, 620 (Iowa 2017) (considering a constitutional challenge to the mandatory $150,000 restitution imposed under Iowa Code section 910.3B on direct appeal despite the defendant's failure to raise the issue in district court after first concluding that restitution, contained in chapter 910, is not part of the defendant's sentence for purposes of applying the sentencing provisions in Iowa Code section 901.5). As we made clear in *State v. Formaro*, however, "[W]hen a [district] court addresses the [challenged] issue . . . *following* the entry of a judgment and sentence, any appeal from a ruling on the issue must be separately appealed. A defendant cannot rely upon the notice of appeal from the judgment and sentence of the district court." 638 N.W.2d at 727 (emphasis added). Thus, whether or not we can consider Kieffer's constitutional challenge depends on whether the judgment and sentence order actually prohibits him from possessing firearms.

The State argues that Kieffer was merely provided with notice that other federal and state laws prohibit him from possessing a firearm based on his conviction for a misdemeanor crime of domestic violence and that his name would be included in the national instant criminal background check system database. *See* Iowa Code § 724.31A(1). While that is true, *see* 18 U.S.C. § 922(g)(9) ("It shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition."); Iowa Code § 724.26(2)(*a*) ("[A] person . . . who has been

convicted of a misdemeanor crime of domestic violence under 18 U.S.C. § 922(g)(9) and who knowingly possesses, ships, transports, or receives a firearm, offensive weapon, or ammunition is guilty of a class 'D' felony."), Kieffer's judgment and sentence order did more than notify him of other laws with which he must comply.

Kieffer's no-contact order, which was expressly extended in the judgment and sentence order and entered immediately after the judgment, expressly prohibited Kieffer from possessing firearms or ammunition and directed him to "IMMEDIATELY" turn over any firearms that he possessed to the Black Hawk County Sheriff. When a defendant is convicted of a "misdemeanor crime of domestic violence" as described in Iowa Code section 724.26(2), the district court is required to inform the defendant that he "shall not possess, ship, transport, or receive a firearm, offensive weapon, or ammunition while such order is in effect or until such conviction is vacated or until the person's rights have been restored in accordance with section 724.27." Iowa Code § 724.26(3). The no-contact order's express directive that Kieffer "shall not" possess firearms and "shall deliver all firearms" to the sheriff "IMMEDIATELY" was a condition of his judgment and sentence order. Stated differently, if Kieffer possessed firearms, or failed to surrender any firearms he then possessed to the Black Hawk County Sheriff, he could be held in contempt of the order. We therefore conclude that the firearm prohibition is a term of Kieffer's sentence, and we can consider his constitutional challenge to the prohibition in this direct appeal from his underlying convictions.

2. *Does the firearm prohibition violate Kieffer's rights under the Second Amendment to the United States Constitution?* We first address Kieffer's challenge to the firearm prohibition under the Second Amendment. Kieffer does not state

whether he is making a facial or an as-applied challenge, but his arguments suggest an as-applied challenge, so we treat it as such.

As relevant here, section 724.26(3) required the district court to inform Kieffer, as a "person who is the subject of" "a judgment of conviction described in subsection 2," "that [he] shall not possess, ship, transport, or receive a firearm, offensive weapon, or ammunition while such order is in effect." Iowa Code § 724.26(3).[3] The "conviction described in subsection 2" is a conviction for "a misdemeanor crime of domestic violence under 18 U.S.C. § 922(g)(9)." *Id.* § 724.26(2)(*a*); *see* 18 U.S.C. § 922(g)(9) ("It shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition."); *see also* Iowa Code § 724.26(2)(*c*) ("For purposes of this section, 'misdemeanor crime of domestic violence' means an assault under section 708.1, subsection 2, paragraph 'a' or 'c', committed . . . by a person who is cohabiting with or has cohabited with the victim . . . ."). The firearm prohibition included in Kieffer's no-contact order is based on his convictions for misdemeanor crimes of domestic violence, specifically, domestic abuse assault impeding the flow of air or blood and domestic abuse assault causing injury. Iowa Code § 708.2A(2)(*b*), (*d*).

---

[3]Kieffer also relies on the notice of firearm prohibition he received pursuant to Iowa Code section 724.31A, which requires that "[t]he clerk of the district court shall . . . notify the person of the prohibitions imposed under this section." Iowa Code § 724.31A(1). Kieffer received such a notice, identifying "I.C. 724.26(2) and 18 USC 922(g)(9)" as the relevant prohibitions—the same provisions that form the basis for the prohibition contained in the no-contact order. Unlike the no-contact order that expressly prohibits Kieffer from possessing firearms and directs him to surrender any firearms in his possession to the Black Hawk County Sheriff, on its face the section 724.31A notice appears to be just that: a notice to Kieffer that he is subject to other statutory provisions. It does not have any independent force. In any event, the section 724.31A notice relies on the same underlying firearm provisions as the no-contact order required by section 724.26(3). To the extent the notice bears on Kieffer's right to keep and bear arms, our discussion of section 724.26(3) applies equally to the requirements of section 724.31A(1).

We start with the United States Supreme Court's most recent discussion of the Second Amendment. In *United States v. Rahimi,* the Court addressed a facial challenge under the Second Amendment to 18 U.S.C. § 922(g)(8), which "prohibits an individual subject to a domestic violence restraining order from possessing a firearm if that order includes a finding that he 'represents a credible threat to the physical safety of [an] intimate partner,' or a child of the partner or individual." 602 U.S. 680, 684–85 (2024) (alteration in original) (quoting 18 U.S.C. § 922(g)(8)). Applying the standard it recently established in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), the *Rahimi* court surveyed "the Nation's historical tradition of firearm regulation," 602 U.S. at 689 (quoting *Bruen*, 597 U.S. at 24), and concluded that "[t]aken together, the surety and going armed laws confirm what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed," *id.* at 698. Thus, the Court rejected Rahimi's Second Amendment challenge.

Since *Rahimi,* federal courts that have addressed Second Amendment challenges to firearm prohibitions for those convicted of misdemeanor crimes of domestic violence under 18 U.S.C. § 922(g)(9) have consistently concluded that this provision also passes constitutional muster. *See, e.g., United States v. Gailes*, 118 F.4th 822, 829 (6th Cir. 2024) (rejecting a facial challenge to a conviction under 18 U.S.C. § 922(g)(9) and explaining that "if someone who is merely accused of committing domestic violence can be disarmed without offending the Second Amendment, then *a fortiori* someone with a valid conviction can also be disarmed"); *United States v. Staats,* No.5:23–CR–00415, 2025 WL 371352, at *4 (N.D. Ohio Feb. 3, 2025) (denying a motion to dismiss indictment for violating 18 U.S.C. § 922(g)(9), rejecting a facial challenge based on *Gailes,*

and rejecting an as-applied challenge "because Defendant's underlying offense was one that involved knowingly causing or attempting to cause physical harm to another"); *United States v. Denis*, No. 6:24–CR–03099–BCW–1, 2025 WL 317283, at *4 (W.D. Mo. Jan. 28, 2025) (denying a motion to declare the charging statute, 18 U.S.C. § 922(g)(9), unconstitutional and dismiss indictment premised on a facial and as-applied challenge because "[a]s demonstrated by surety and going armed laws that existed at the time of the founding, modern firearms regulations targeting those who pose a clear threat of violence to another do not violate the Second Amendment"); *United States v. Peppers*, No. 3:24–cr–87, 2024 WL 5202640, at *4 (N.D. Ohio Dec. 23, 2024) (denying a motion to dismiss indictment for violating 18 U.S.C. § 922(g)(9) premised on an as-applied Second Amendment challenge where the defendant's "prior misdemeanor domestic violence convictions indicate he is dangerous in the manner described in [*United States v.*] *Williams*[, 113 F.4th 637 (6th Cir. 2024) (setting out the framework for addressing an as-applied challenge to a conviction under 18 U.S.C. § 922(g)(1) for being a felon-in-possession),] because the statute under which he was convicted requires the offender to have caused or attempted to cause 'physical harm' "); *Decker v. FBI*, No. 2:24–cv–09039–HDV–JDE, 2024 WL 5319140, at *6 (C.D. Cal. Dec. 17, 2024) (rejecting an as-applied challenge to 18 U.S.C. § 922(g)(9) because the "conviction for an offense that involved the 'willful and unlawful use of force or violence upon the person of another' places him in the category of dangerous offenders that Congress may prohibit from possessing firearms without violating the Second Amendment" and explaining that the defendant "remains free to obtain relief from the Section 922(g)(9) prohibition through a pardon, expungement, or restoration of civil rights as provided under 18 U.S.C. § 921(a)(33)(B)(ii)"); *White v. United States*, No. 5:23–cv–02215–

DSF–SP, 2024 WL 4868287, at *4 (C.D. Cal. Sept. 24, 2024) (granting summary judgment against a petitioner seeking declaratory relief against the United States in a challenge to the denial of an application to purchase a firearm based on a 2004 misdemeanor domestic violence conviction and explaining that "[l]ike '922(g)(8)'s prohibition on gun possession for individuals subject to domestic violence restraining orders[,]' 922(g)(9)'s prohibition on gun possession by persons who have been convicted of a misdemeanor crime of domestic violence is part of the 'tradition of firearm regulation allow[ing] the Government to disarm individuals who present a credible threat to the physical safety of others'" despite the lifelong prohibition imposed by § 922(g)(9) (alterations in original) (quoting *Rahimi*, 602 U.S. at 703 (Sotomayor, J., concurring))). "Even Justice Thomas's dissenting opinion in *Rahimi*, which took issue with § 922(g)(8)'s ability to disarm people without a criminal conviction, noted how § 922(g)(9) does not suffer that problem." *Gailes*, 118 F.4th at 829 (citing *Rahimi*, 602 U.S. at 748 (Thomas, J., dissenting)).

With respect to Second Amendment challenges to the firearm prohibition imposed on felons contained in § 922(g)(1), federal courts either: (1) apply a categorical rule rejecting the challenge, *see, e.g., United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024) (affirming the denial of a motion to dismiss indictment charging a violation of § 922(g)(1) premised on underlying "non-violent" drug offenses against an as-applied Second Amendment challenge and "conclud[ing] that there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)"), or (2) they consider whether the underlying felony is sufficiently analogous to a founding-era law supporting a firearm prohibition, *see, e.g., United States v. Diaz*, 116 F.4th 458, 471 (5th Cir. 2024) (affirming a conviction for being a felon-in-possession under § 922(g)(1) premised

on prior convictions for car theft, evading arrest, and possessing a firearm as a felon in response to a Second Amendment as-applied challenge, concluding that founding-era "laws authorizing severe punishments for thievery and permanent disarmament in other cases establish that our tradition of firearm regulation supports the application of § 922(g)(1)" to the defendant); *Williams*, 113 F.4th at 661–62 (holding that § 922(g)(1) "is constitutional as it applies to dangerous individuals" and making an individualized assessment of whether the defendant's criminal record showed that he was dangerous as part of an as-applied challenge). Kieffer has identified no cases upholding a Second Amendment challenge to a firearm prohibition premised on section 922(g)(9), and we are aware of none.

Kieffer was convicted of domestic abuse assault impeding the flow of air or blood and domestic abuse assault causing injury after he hit and choked Daphne, leaving scratches on her neck and face, marks on her back and legs, a broken blood vessel in her eye, and a bloody lip. Whether considered under *Rahimi*'s test of "pos[ing] a clear threat of physical violence to another," 602 U.S. at 684–85, or the Sixth Circuit's individualized "dangerous" standard, *see Williams*, 113 F.4th at 661–62, we have little trouble concluding that the firearm prohibition included in Kieffer's no-contact order does not offend the Second Amendment under the current landscape of federal jurisprudence.

3. *Does the firearm prohibition violate Kieffer's rights under article I, section 1A of the Iowa Constitution?* While we disagree with the State's procedural objections to reaching Kieffer's challenge to the firearm prohibition, we agree with the State that we must limit our analysis to the specific restrictions imposed on Kieffer as a term of his sentence.

Iowa voters ratified an amendment to the Iowa Constitution on November 8, 2022, adding a provision protecting citizens' rights to keep and bear arms as article I, section 1A of the Iowa Constitution. *See In re N.S.*, 13 N.W.3d 811, 826 (Iowa 2024) (discussing background and enactment of article I, section 1A). Kieffer argues that prohibiting him from possessing firearms based on his conviction for a misdemeanor crime of domestic violence cannot withstand the strict scrutiny required by article I, section 1A. *See* Iowa Const. art. I, § 1A ("The right of the people to keep and bear arms shall not be infringed. . . . Any and all restrictions of this right shall be subject to strict scrutiny.").

"By its explicit terms, article I, section 1A subjects to strict scrutiny state infringements or restrictions of the state constitutional right to keep and bear arms." *In re N.S.*, 13 N.W.3d at 837 (McDonald, J., concurring in part and concurring in the judgment). For example, if Kieffer were to violate the order by possessing a firearm, he could be charged with violating state law. *See* Iowa Code § 724.26(2). Likewise, if Kieffer were to seek a permit to carry a firearm, Iowa law would prohibit him from obtaining one. *See id.* § 724.8(4) (precluding issuance of a permit to carry weapons to anyone who "[i]s subject to the provisions of section 724.26"). But those situations are not before us. As the State points out, Kieffer has not been charged with illegally possessing a firearm, has not attempted to obtain a permit to carry, and has not sought to lift the firearm restrictions under Iowa Code section 724.27. So challenges to those state statutes are not ripe. *See Barker v. Iowa Dep't of Pub. Safety*, 922 N.W.2d 581, 590 (Iowa 2019) ("A case is ripe for adjudication when it presents an actual, present controversy, as opposed to one that is merely hypothetical or speculative." (quoting *State v. Bullock*, 638 N.W.2d 728, 734 (Iowa 2002))).

As discussed above, the relevant statute is Iowa Code section 724.26(3), which required the district court to include the firearm prohibition in Kieffer's no-contact order because Kieffer is "the subject of" "a judgment of conviction described in subsection 2," Iowa Code § 724.26(3), including a conviction for a "misdemeanor crime of domestic violence under 18 U.S.C. § 922(g)(9)," *id.* § 724.26(2)(*a*). Thus, the order prohibiting Kieffer from possessing firearms is based on both federal and state law.

The Supremacy Clause of the United States Constitution makes clear that the Iowa Constitution has nothing to say about a firearm prohibition imposed by federal law. *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."); *United States v. Baer*, 235 F.3d 561, 562 (10th Cir. 2000) (rejecting the defendant's argument that his conviction for being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) violated his right to bear arms under the Utah Constitution "because under the Supremacy Clause, state constitutional provisions cannot override federal criminal statutes unless incorporated into federal law"); *see also United States v. Leach*, 639 F.3d 769, 772 (7th Cir. 2011) (rejecting a challenge to the Sex Offender Registration and Notification Act (SORNA) as violating the ex post facto provisions of the Indiana Constitution and explaining the court could not determine "whether SORNA—a federal statute—'complies' with the law of any particular state [because t]he Supremacy Clause establishes that state constitutional provisions cannot override federal statutes"), *overruled on other grounds by Kock v. Village of Hartland*, 43 F.4th 747 (7th Cir. 2022).

To the extent Kieffer's state constitutional challenge turns on a consideration of 18 U.S.C. § 922(g)(9), the Supremacy Clause precludes us from

considering whether that provision complies with article I, section 1A of the Iowa Constitution. In other words, even if we were to conclude that state law prohibiting Kieffer from possessing a firearm based on his convictions for domestic abuse assault violated article I, section 1A of the Iowa Constitution, Iowa Code section 724.26(3) required the firearm prohibition to be included in the no-contact order based, at least in part, on the federal prohibition contained in 18 U.S.C. § 922(g)(9). Thus, the firearm prohibition would remain in place based on the federal prohibition, which survives Kieffer's Second Amendment challenge for the reasons discussed above. Accordingly, regardless of the merits of Kieffer's state constitutional challenge, his article I, section 1A claim is not redressable by this court. "Avoidance of constitutional issues except when necessary for proper disposition of [a] controversy is a bulwark of American jurisprudence." *Salsbury Lab'ys v. Iowa Dep't of Env't Quality*, 276 N.W.2d 830, 837 (Iowa 1979). We therefore do not address Kieffer's constitutional challenge under article I, section 1A.

### III. Conclusion.

For the reasons stated above, we affirm Kieffer's convictions and sentence.

**Affirmed.**